**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
DISTRICT OF COLUMBIA,          )
                               )
        Plaintiff,             )
                               )
     v.                        )    Civ. No. 04-1451 (EGS)
                               )
JANE DOE, NEXT BEST FRIEND OF  )
JOHN DOE,                      )
                               )
        Defendant.             )
_____)
```

**MEMORANDUM OPINION**

Plaintiff District of Columbia brought this action against Jane Doe, the parent and next friend of John Doe, a minor child, appealing a June 4, 2004, District of Columbia Public Schools ("DCPS") Hearing Officer's Decision ("HOD"), issued pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415. Pending before the Court are plaintiff's and defendant's Cross-Motions for Summary Judgment, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Upon consideration of the motions, the responses and replies thereto, and the applicable law, plaintiff's motion is **GRANTED** and defendant's motion is **DENIED**.

**I.   Legal Framework**

   **A.   Standard of Review**

Summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  In considering whether there is a triable issue of fact, the court must draw all reasonable inferences in favor of the non-moving party.  *Id.*

In reviewing cases under the IDEA, courts will review the records of the administrative proceeding, hear additional evidence at the request of a party, and make a decision based on the preponderance of the evidence.  *See* 20 U.S.C. § 1415 (i)(2)(C).  Judicial review under IDEA is more rigorous than in typical agency cases.  *Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005).  However, "a party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and the court upsetting the officer's decision must at least explain its basis for doing so."  *Id.* (citing *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989) ("*Kerkam I*").  Although the Court must give "due weight" to the administrative proceedings, *id.*, a hearing officer's decision "without reasoned and specific

findings deserves little deference." *See Kerkam v. Superintendent, D.C. Pub. Schs.*, 931 F.2d 84, 87 (D.C. Cir. 1991) ("*Kerkam II*") (internal quotation marks omitted).

### B.  **The Individuals with Disabilities Education Act (IDEA)**

Under the IDEA, if a student with a disability "violates any rule or code that applies to all children," then a meeting must be conducted within 10 days to determine the relationship between the student's actions and the student's disability.  20 U.S.C. § 1415 (k)(1)(E)(ii).  The student's parent, a DCPS representative, and relevant members of the student's Individual Education Program team must be present at this meeting, and must decide whether or not the student's conduct was a manifestation of his or her disability.  20 U.S.C. § 1415 (k)(1)(E).  Once an IDEA hearing officer determines that the subject behavior was not a manifestation of the student's disability, then the student may be disciplined in the same manner as any other student, provided that the student receives a free appropriate public education ("FAPE").  20 U.S.C. § 1415 (k)(1)(C).  *See also* 5 D.C.M.R. § 2510.10.

Any party aggrieved by the findings and decision made by the hearing officer shall have the right to bring a civil action in a district court of the United States, without regard to the amount in controversy.  20 U.S.C. § 1415 (i)(2)(A).  In any action or proceeding brought under this section, the court, in its

discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability.  20 U.S.C. § 1415 (i)(3)(B).

**C.   Code of District of Columbia Municipal Regulations**

The District of Columbia's procedures for disciplinary actions against non-disabled students are as follows:

1)  The decision to effect a disciplinary action shall be made by the principal or the principal's designee, and may be made upon the recommendation of a teacher or other D.C. Public School employee.  The implementation of a disciplinary action for a Level II infraction shall be approved by the Superintendent's designee.  The Superintendent may modify any proposed disciplinary action.  *See* 5 D.C.M.R. § 2505.2.;

2) The student shall be given a conference with the school official responsible for making or approving the disciplinary action, prior to the exclusion, suspension, or expulsion.  *See* 5 D.C.M.R. § 2505.4;

3)  The principal or school official initiating a class exclusion of eleven (11) days or more shall advise the student hearing office of the exclusion immediately upon its initiation. *See* 5 D.C.M.R. § 2505.10;

4) The adult student, or minor student's parent or guardian, may request a hearing by contacting the student hearing office within two (2) school days of the receipt of the notice of the

findings and recommendations of the conference.  *See* 5 D.C.M.R. § 2505.11;

5) It shall be the burden of the D.C. Public Schools to show by a preponderance of the evidence that the student did, in fact, commit the infraction(s) upon which the disciplinary action is based.  *See* 5 D.C.M.R. § 2505.18;

6) The hearing officer shall determine that all due process procedures have been followed or waived.  *See* 5 D.C.M.R. § 2505.22;

7) The hearing officer's determination with respect to disciplinary actions other than expulsion shall be binding unless changed following an appeal to the Superintendent or the Superintendent's designee.  *See* 5 D.C.M.R. § 2507.4.  *See also* 5 D.C.M.R. § 2508.2 ("With respect to all disciplinary actions, the Superintendent may overrule or modify any proposed disciplinary action including expulsion.").

**II.  Factual Background**

John Doe was a student in the sixth grade at Janney Elementary School at the time that the behavioral incident in question occurred.  Pl.'s Mot. Ex. 1 at 3.  He was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), and an Individual Education Plan ("IEP") was developed for him on March 5, 2004.  *Id.* at 4.  On March 30, 2004, John Doe misbehaved in class before a substitute teacher, and the misconduct was

reported to the school principal, Dr. Charles Abelmann.  *Id.*

Based on John Doe's actions, and because this was the third Level I infraction committed by the student during the 2003-2004 school year, Dr. Abelmann classified John Doe's misconduct as a Level II infraction and ordered the student to be suspended for fifty-four days.[1]  Pl.'s Mot. Ex. 1 at 5.  Dr. Abelmann's request to classify the incident as a Level II infraction was approved by the Assistant Superintendent, and the fifty-four day suspension began on March 31, 2004.  *Id.*

Because John Doe was a special education student, on April 1, 2004, a Manifestation Determination Review ("MDR") meeting was held to determine if the student's behavior was a manifestation of his disabilities.  *Id.*  The MDR team consisted of Dr. Abelmann, the student's regular teacher, the school social worker, the school behavior specialist, and the Special Education Teacher.  *Id.*  The mother was notified of the meeting, but did not attend.  *Id.*  The MDR team observed that the student understood the impact and consequences of his behavior and had control over the choices he made during the incident with the substitute teacher.  *Id.* at 6.  The team concluded that the

---

[1] A Level I infraction is grounds for class exclusion or suspension for ten days or less, but a subsequent Level I infraction within the same school year may constitute a Level II infraction and/or grounds for an involuntary transfer.  *See* 5 DCMR 2503.1(b).  Level II infractions are more serious, and are grounds for suspension for no less than ten days and no more than two semesters.  5 DCMR § 2503.2.

student's actions were not a manifestation of his disabilities, and recommended that the student be suspended and placed in an alternative school setting. *Id.* On April 1, 2004, a "Referral Package" was provided to Choice Academy by Janney. The defendant timely challenged the duration of the suspension, the student's placement at Choice Academy for the entire period of suspension, and the determination that defendant's conduct was not a manifestation of his disabilities, and requested a Disciplinary Hearing. *Id.*

A Disciplinary Hearing was held on April 8, 2004, to determine whether the student's behavior towards the substitute teacher was a manifestation of his disabilities. *Id.* Representatives of DCPS, the parent, and various witnesses were present at the hearing. The Student Disciplinary Hearing Officer on record invoked the "Stay-Put" provision ordering that the student remain at Janney instead of being transferred to the alternative placement, pending a decision. *Id.* A decision was issued on April 14, 2004, in which the hearing officer concluded that the student's behavior on March 30, 2004 was not a manifestation of his disabilities. *Id.* at 7. Nevertheless, the hearing officer concluded that a fifty-four day suspension was excessive because defendant's behavior was tantamount to being a nuisance and reduced the student's suspension to ten days. Following the hearing officer's decision, the student was

eligible to return to Janney on April 22, 2004.  *Id.*

DCPS appealed that decision to the Assistant Superintendent, arguing that the hearing officer erred in not considering the violation of March 31, 2004 as a subsequent Level I infraction, thus amounting to a Level II infraction, which warranted a suspension of not less than eleven school days and up to two semesters.  *Id.*  On April 23, 2004, the Assistant Superintendent granted-in-part DCPS's appeal and imposed a forty-five day suspension, which is the maximum number of days he believed a student receiving special education could be suspended.  *Id.*

DCPS and the parent then appealed the hearing officer's decision to the United States District Court for the District of Columbia.[2]  This Court issued an order requiring a Due Process Hearing be held to review the actions of DCPS regarding the suspension of the student for disciplinary reasons.  *Id.* at 3.

A hearing was held from May 14 to May 21, 2004.  On June 4, 2004, the hearing officer issued a decision, construing the issue under consideration as, "whether DCPS denied the student a FAPE by suspending him for forty-five days?"  After hearing the testimony and giving deference to the Janney staff who regularly interacted with the student, the hearing officer concluded that "DCPS has met its burden with substantial evidence that the

---

[2] This case, *Jane Doe v. District of Columbia Public Schools*, 1:04-cv-00732-EGS, was dismissed without prejudice on May 21, 2004.

student's conduct on March 30, 2004 was not a manifestation of his disability." *Id.* at 28.  The hearing officer further concluded that although standing alone the March 30, 2004 events would not raise above a Level I infraction, "it was reasonable for Dr. Abelmann to conclude that the third Level I infraction should be elevated to a Level II infraction."  *Id.*

Despite finding that a Level II classification was appropriate, the hearing officer concluded that the student's conduct did not warrant a forty-five day suspension, and reduced the suspension to eleven days, the minimum for a Level II infraction.  *Id.* at 28.  Additionally, the hearing officer stated that there was no evidence that the student was a danger to himself or others warranting a change in placement and ordered that the student remain at Janney for the remainder of the 2003-2004 school year.  *Id.* at 28-29.  The present case is an appeal of the June 4, 2004 HOD.  Pl.'s Mot. 3.

### III. Discussion

Plaintiff District of Columbia argues that the hearing officer erred and exceeded his authority and jurisdiction when he reduced the suspension issued by the DCPS Assistant Superintendent from forty-five days to eleven days, despite finding that John Doe's actions were not a manifestation of his disabilities.  Pl.'s Mot. 6.  As a result of that decision, the defendant was found to be the prevailing party, and would

9

consequently be entitled to attorney's fees.  *See* 20 U.S.C. § 1415 (i)(3)(B).  The defendant has indicated to DCPS that she intends to seek more than $30,000 in attorney's fees and costs. Pl.'s Ex. 3.

Defendant contends that this appeal from the hearing officer's decision is moot because DCPS can no longer enforce the longer suspension, as John Doe no longer attends Janney Elementary, nor any other DCPS school.  Def.'s Opp'n 1.  *See also* Def.'s Mot. 2.  Further, the defendant contends that the hearing officer did not exceed his authority by reducing John Doe's suspension, because the hearing officer had the authority to decide other issues besides whether John Doe's conduct was a manifestation of his disabilities.  Def.'s Mot. 8.

**A.   Mootness**

Article III of the Constitution requires the existence of a "Case" or "Controversy" before permitting judicial action.  *See DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) ("the inability of the federal judiciary to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy") (internal citation and quotation marks omitted). "If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." *McBryde v. Comm. to Review Circuit Council Conduct and Disability*

*Orders of the Judicial Conference of the United States*, 264 F.3d 52, 55 (D.C. Cir. 2001).

Where only declaratory relief is requested, and events have so transpired that the controversy has ended and there is no remedy for the court to impose, a controversy is moot unless one of the exceptions to mootness applies. *See Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997). There are two exceptions to the mootness doctrine - one for actions "capable of repetition yet evading review," and another for addressing the defendant's "voluntary cessation" of the offending conduct. *See Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990). In considering the doctrinal exception to mootness for cases challenging short-term actions that are "capable of repetition, yet evading review," the plaintiff must demonstrate that: "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Jenkins v. Squillacote*, 935 F.2d 303, 308 (D.C. Cir. 1991).

The events have so transpired since this lawsuit was originally filed in 2004 that the controversy has virtually ended. As the parties have acknowledged, were the HOD to be reversed, DCPS could no longer enforce the longer suspension

because John Doe no longer attends Janney Elementary School, nor any other DCPS school.  Pl.'s Mot. 7.

Here, plaintiff seeks a declaration that the Superintendent or his designee makes the final agency determination regarding discipline, once it is determined that the subject behavior is not a manifestation of the student's disability.  Compl. 8. Since declaratory judgment is the only relief requested, the Court must determine if an exception to the doctrine of mootness applies.  The Court shall analyze whether the challenged action is "capable of repetition, yet evading review."  *Jenkins*, 935 F.2d at 308 (holding that the superintendent's challenge to an HOD was not moot, even though the school year had ended because the controversy was "capable of repetition, yet evading review").

With respect to the first prong, the Superintendent suspended John Doe for a period of forty-four days, and the hearing officer reduced that suspension to a period of eleven days.  Regardless of whether the suspension is forty-four days or eleven days, either time period is too short in duration for the matter to be fully litigated prior to its expiration.  *See Jenkins*, 935 F.2d at 308 ("There can be no doubt that a one-year placement order under the IDEA is, by its nature, too short in duration to be fully litigated prior to its expiration.")(internal citations omitted).

With respect to the second prong, because the District of

Columbia is the only defendant in IDEA cases within the District of Columbia, there is a reasonable expectation that DCPS will be confronted with this issue again.  If the Court failed to clarify the law on this issue in this case, DCPS could be subjected to repeated erroneous legal decisions by uninformed Hearing Officers, and could be subjected to paying awards of attorney fees to a "prevailing party," who prevails for erroneous legal reasons.  Therefore, the Court finds this controversy to be "capable of repetition, yet evading review."  *Id*.

    **B.   Hearing Officer's Determination**

As a result of John Doe's conduct in class on March 30, 2004, Dr. Abelmann charged John Doe with committing a Level II infraction and ordered his suspension from school for fifty-four days, as authorized by 5 D.C.M.R. § 2505.2.  A hearing officer reduced the suspension to ten days, pursuant to 5 D.C.M.R. § 2505.22.  DCPS appealed that decision to the Assistant Superintendent, a designee of the Superintendent, who increased the suspension to forty-five days, pursuant to 5 D.C.M.R. § 2507.4.  *See also* 5 D.C.M.R. § 2508.2.  DCPS and the parent then appealed the hearing officer's decision to this Court, which issued an order requiring an IDEA Due Process hearing to be held to review the actions of DCPS regarding the suspension of the student for disciplinary reasons.  The hearing officer was statutorily obligated to determine: 1) whether John Doe's

conduct was a manifestation of his disabilities; and if not, 2) whether John Doe was denied a FAPE.  *See* 20 U.S.C. § 1415 (k)(1)(C); 5 D.C.M.R. § 2510.10.

The hearing officer concluded that the student's conduct was not a manifestation of his disability.  Pl.'s Ex. 1 at 27 ("DCPS has met its burden with substantial evidence that the student's conduct on March 30, 2004 was not a manifestation of his disability.").  Once this determination was reached, the DCPS was entitled to discipline John Doe the same as any other student who was not diagnosed with disabilities, so long as the student was not denied a FAPE.  *See* 20 U.S.C. § 1415 (k)(1)(C); 5 D.C.M.R. § 2510.10.

The hearing officer then considered whether the suspension and placement at Choice Academy as an interim alternative education setting would constitute denial of a FAPE.  The hearing officer noted that, "[I]n view of the student's disability and his special education needs, [and] the programs offered by Choice . . ., Choice may be able to provide the student with educational benefit. . . ."  *Id.* at 29.  Despite concluding that placement at Choice Academy would not constitute denial of a FAPE, the hearing officer nevertheless concluded that the length of the suspension was too long and that placement at Choice was unreasonable.  *Id.* The hearing officer then reduced the period of the student's suspension to eleven days and ordered that the student be placed

at Janney Elementary for the remainder of the 2003-2004 school year.  *Id.* at 30.

The Superintendent is the final decision-maker with respect to disciplinary decisions for non-disabled students.  *See* 5 D.C.M.R. § 2507.4.  The hearing officer exceeded the scope of his authority when he reduced the Assistant Superintendent's suspension, in spite of his finding that the student's conduct was not a manifestation of his disabilities and that the discipline imposed would not constitute a denial of a FAPE.  *See* 20 U.S.C. § 1415 (k)(1)(C); 5 D.C.M.R. § 2510.10.

**IV. Conclusion**

Based on the foregoing, plaintiff's motion for summary judgment is **GRANTED** and defendant's motion for summary judgment is **DENIED**.  An appropriate order accompanies this Memorandum Opinion.

**Signed:     Emmet G. Sullivan**
**             United States District Judge**
**             August 28, 2008**